BOSWELL et al. v. PANNELL.†

(Court of Civil Appeals of Texas. Austin. Feb. 21, 1912. Rehearing Denied March 20, 1912.)

1. TRIAL (§ 234*)—INSTRUCTIONS—BURDEN OF PROOF.

In an action to cancel a contract to exchange lands, and deeds made thereunder from plaintiff to defendant and from defendant to codefendant, on the ground of fraud, instructions that, if the jury found from a preponderance of the evidence that codefendant, for a valuable consideration, purchased without notice of an escrow agreement relied on by plaintiff, verdict must be for codefendant, etc., were not improper as requiring defendants to negative, by a preponderance of the evidence, matters which plaintiff was bound to show affirmatively.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 534–538, 566; Dec. Dig. § 234.*]

---

2. ESCROWS (§ 14*)—FRAUD—RIGHTS OF PARTIES.

One who has placed a deed in escrow for delivery to a named purchaser upon a certain contingency does not lose his land if the depositary should wrongfully, without the happening of such contingency, deliver the deed to the grantee, who immediately places the same upon record, and thereafter sells the land to an innocent purchaser for value, without notice.

[Ed. Note.—For other cases, see Escrows, Cent. Dig. §§ 17–20; Dec. Dig. § 14.*]

3. TRIAL (§ 234*)—INSTRUCTIONS—BURDEN OF PROOF.

In an action to cancel a contract to exchange lands, and conveyances made thereunder, an instruction that, if the jury found by a preponderance of the evidence that plaintiff was fraudulently induced to place the deed to him on record, he would not be estopped to recover was not improper as requiring defendant to negative, by a preponderance of the evidence, matters which plaintiff was bound to show affirmatively.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 534–538, 566; Dec. Dig. § 234.*]

4. APPEAL AND ERROR (§ 1062*)—HARMLESS ERROR—SUBMISSION OF ISSUES.

Any error in submitting an issue of constructive notice for want of evidence is harmless, where actual notice is established.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

5. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL—MATTER COVERED.

A requested instruction, covered by one given, is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

6. CANCELLATION OF INSTRUMENTS (§ 37*)—PLEADING—BONA FIDE PURCHASER—SUFFICIENCY.

In an action to cancel a contract to exchange lands, and deeds made thereunder from plaintiff to defendant and from defendant to codefendant, the petition, which charged that all the defendants, excepting codefendant, conspired to defraud plaintiff of his land, and that codefendant purchased with knowledge of such facts as prevented him from being an innocent purchaser, was sufficient to charge him.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 66–81; Dec. Dig. § 37.*]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by F. M. Pannell against W. A. Boswell and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Warren Moore, for appellant Boswell. James M. Harris and Geo. E. Shelley, for appellant Barrow. Henry Faulk and Albert S. Phelps, for appellee.

RICE, J. This suit was brought by Fuller M. Pannell, as plaintiff, against J. B. Boatwright, W. A. Boswell, R. D. Shofner, and T. H. Barrow, for the purpose of canceling a written contract for the conveyance of land, two certain deeds, and a vendor's lien note, hereinafter mentioned, on the ground that the same were fraudulently procured, and, in the alternative, for a moneyed judgment against said parties for the value of

said note and the value of one of said tract of land, alleging that theretofore, to wit, in January, 1910, appellee was the owner of a certain tract of land situated in Milam county, Tex., containing 140 acres of land, and that said Boatwright claimed to own at that time a certain 640-acre tract of land, situated partly in Brown and partly in Mills counties, Tex., which respective tracts of land plaintiff and defendant Boatwright both verbally agreed, through Boswell and Shofner, real estate agents, to exchange with each other upon the following conditions, to wit: That, in consideration of plaintiff's conveying to Boatwright his tract of land, Boatwright would convey his tract to plaintiff, assuming to pay off a $600 vendor's lien note outstanding against it, and likewise agreed to pay the commission due Boswell and Shofner by plaintiff and Boatwright for effecting said exchange, amounting to the sum of $600; it being understood that said exchange should not be effectual and no deeds should pass between them, unless each party should furnish to the other within 90 days an abstract of title to their respective tracts of land, which should be pronounced a good and valid title by some competent Austin attorney. Thereafter it was suggested by Boswell and Shofner that it was desirable and better to reduce said agreement to writing. Whereupon they prepared an agreement, which was afterwards duly signed by Boatwright and submitted by them to plaintiff, which plaintiff signed without reading, believing, upon their representations at the time, that it was in substantial compliance with said verbal agreement, and contained all the provisions thereof; but said writing in fact did not contain all the stipulations of said verbal agreement, in that the same omitted that part of said agreement which provided that neither party was bound thereby, unless the title of each was pronounced good and satisfactory by said attorneys, to whom the same was submitted, but only provided that abstracts should be furnished and warranty deeds executed. Thereafter Boswell and Shofner stated to plaintiff that said Boatwright had no ready cash, and suggested that, in order to facilitate the exchange of said lands, when the abstract should be returned, that he should provide in his conveyance to Boatwright, as a part of the consideration, the execution by Boatwright to him of a vendor's lien note for $1,200, which they, upon the consummation of said transaction, would sell, retaining out of the proceeds thereof $600 in payment of their commissions, and applying the balance to the satisfaction of said outstanding vendor's lien note of $600 against the Milam county land, which Boatwright had agreed to assume. It was further understood between plaintiff and said Boatwright that upon the execution of their respective deeds as con-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

templated that the same, together with the note above mentioned, should be placed in the hands of Boswell and Shofner in escrow, as their agents, not to be delivered until the terms of said agreement should be fully complied with; but, notwithstanding that said deeds were so left with them in escrow, they, together with Boatwright, conspiring to cheat, swindle, and defraud plaintiff out of the value of said land and note, fraudulently induced plaintiff to place his deed from Boatwright on record in Brown county, and proceeded at once to place plaintiff's deed to the Milam county land upon record, and thereafter caused Boatwright to convey said Milam county land to Barrow, and sold the vendor's lien note, which they in the meantime had fraudulently procured plaintiff to indorse and transfer to them, applying the proceeds to their own use and benefit; that the title to the Brown county land was defective, and so pronounced by a competent Austin attorney, to whom the same was submitted, whereupon plaintiff at once demanded of Boswell and Shofner his deed and note, which was refused, on the ground that they had delivered his deed to Boatwright, and had sold the note, claiming that the agreement for the exchange permitted them so to do. Plaintiff further alleged that the said Barrow had actual and constructive notice of the terms of said agreement with Boatwright, and knew that said deed was held in escrow, and that, if he did not have actual or constructive notice thereof, yet he had notice of such facts as would put him upon inquiry that would lead to a discovery thereof.

Defendants, other than Barrow, denied specifically the alleged escrow agreement, asserting that the trade was fully consummated before the deeds passed, and specifically denied all other allegations of plaintiff as to fraud and collusion. Defendant Barrow denied specifically any participation in or notice of the alleged escrow agreement and of the alleged fraudulent acts of the other defendants, and alleged that he had paid a full and valuable consideration to defendant Boatwright for the Milam county land prior to any knowledge or information as to the alleged claim of fraud or the escrow agreement asserted by plaintiff, and asked for judgment quieting his title to the land.

The case being discontinued as to Shofner, proceeded to trial as against the other defendants, resulting in a verdict and judgment for plaintiff for the recovery of the Milam county land and cancellation of the deeds from plaintiff to Boatwright and from Boatwright to Barrow, and against defendant Boswell for the sum of $1,200 and interest, from which judgment Boswell and Barrow alone have prosecuted their appeals, and have filed their respective briefs.

There was evidence tending to support the allegations of the pleadings of the respective parties.

...[1] The court, after reciting the provisions of the contract as set out in plaintiff's petition in the fifth paragraph of its charge, proceeding to apply the law to the facts, charged the jury in the seventh and eleventh paragraphs thereof, as follows, to wit:

"(7) If the jury find from a preponderance of the evidence in this case that the plaintiff and defendant Boatwright made and entered into the agreement, as set out in paragraph 5 of this charge, and the jury further find from a preponderance of the evidence that the defendant Barrow purchased said land from the defendant Boatwright before the consummation of said agreement and contract between the plaintiff and the defendant Boatwright, and that, before the purchase of said property by said defendant Barrow from the said defendant Boatwright, the said defendant Barrow had notice, either actual or constructive, as hereinbefore defined and explained, of the agreement, if any, between the plaintiff and defendant Boatwright, as set out in paragraph 5 of this charge, then the jury will find a verdict for the plaintiff against the defendant Barrow for the cancellation of said deed from defendant Boatwright to defendant Barrow, and for the recovery of said land described in said deed. *If, however, the jury find from a preponderance of the evidence that the defendant Barrow purchased said land from the defendant Boatwright without notice of said alleged agreement set out in paragraph 5 of this charge, and for a valuable consideration, then the jury will return a general verdict for the defendant Barrow.*"

"(11) *If the jury find from a preponderance of the evidence that there was an agreement between plaintiff and defendant Boatwright, as set out in paragraph 5 of this charge, and further find from a preponderance of the evidence that the defendant Boswell had no knowledge of said agreement, and did not agree to hold said deeds and note, as alleged by plaintiff, then the jury will find for the defendant Boswell as to the plaintiff's cause of action against him.*"

Appellants both contend that said charges, in effect, erroneously place the burden of proof on them to establish their defenses by a preponderance of the evidence before they would be entitled to a verdict in their behalf. In other words, that the charge complained of required defendant Barrow to disprove, by a preponderance of the evidence, facts which the law required plaintiff to affirmatively prove, by a preponderance of the evidence, as a prerequisite to making out a case against him, and therefore imposes upon said defendant a greater burden than the law imposed upon him. And appellant Boswell contends that said paragraph 11 required him to prove, by a preponderance of the evidence, the negative fact that he had no knowledge of the agreement referred to, and did not agree to hold said deeds and note, as alleged by plaintiff, be-

fore they could find for him; whereas, the charge should have required that plaintiff prove, by a preponderance of the evidence the affirmative, that Boswell had knowledge of the agreement mentioned, or did, in fact, agree to hold said deeds and note, as alleged by plaintiff.

We differ with appellants in this respect, for the reason that the court in neither of said paragraphs made an incorrect statement of the law, because it is true, as stated in paragraph 7 of said charge, that, if the jury found from a preponderance of the evidence that the defendant Barrow purchased said land from Boatwright, without notice of the agreement set forth in the petition, for a valuable consideration, then it was their duty to find for him; but said charge did not undertake to say that they could not find for him upon less than a preponderance of the evidence. And it is also true that, if the jury should believe from a preponderance of the evidence that Boswell was not a party to said agreement to hold said deeds and note in escrow, or had no knowledge thereof, then they should find for him, because said charge was not equivalent to telling the jury that they could not find for him in the event they should believe this on less proof than a preponderance of the evidence. Neither of said paragraphs, therefore, were misdirections of the law to the jury. The exact question under consideration has been passed on adversely to appellants' contention by the Supreme Court, in the cases of Gulf, Colorado & Santa Fé Ry. Co. v. Hill, 95 Tex. 629, 69 S. W. 136, Railway v. Wood, 69 Tex. 679, 7 S. W. 372, and Railway v. Brown, 78 Tex. 402, 14 S. W. 1034. .

In Railway v. Wood, supra, where the court had instructed the jury that, if appellant constructed its roadbed or grade in such a way and in such a manner as to guard against ordinary freshets, overflows, tides, and so on, so as to prevent damage therefrom to adjacent property, it would not be liable for damages arising from an extraordinary or unusual rise or overflow of water, such as could not have been foreseen or anticipated by the use of the greatest care, skill, and caution in the construction of its roadbed. Mr. Justice Stayton, in commenting upon said charge, said: "The charge certainly stated a correct rule of law; and if the appellant was of the opinion that the exercise of a less degree of care would have relieved it from liability, a charge upon that subject should have been asked. If the charge had informed the jury that nothing less than the exercise of the highest skill, care, and caution would relieve the appellant from liability for an injury resulting from an extraordinary or unusual rise or overflow, a different question would arise. There is no reason to believe that the jury were misled, if they considered the entire charge."

In Railway v. Brown, supra, the following charge was given: "Now, if the railway company did provide suitable and safe approaches to their platforms at Big Sandy for the egress of its passengers at such points as passengers would ordinarily or naturally go, properly lighted, and the plaintiff did not exercise proper and reasonable care, and walked off the platform in the dark at a point not provided for passengers to leave, and it was a point that passengers would not naturally or ordinarily go to get off the platform, the plaintiff cannot recover." Mr. Justice Gaines, commenting on this charge, says: "It is insisted that this charge is erroneous, because it made it necessary for the defendant to prove, both that it was careful and that plaintiff was negligent, before it was entitled to a recovery. But the charge does not assert this proposition. It tells the jury that, if the defendant was careful and the plaintiff was negligent, the latter could not recover. This is correct. The proposition is not erroneous. The court might properly have gone further and charged in the disjunctive, and have told the jury that if either the defendant was careful or the plaintiff negligent the defendant should have a judgment. This presents an instance, not of an erroneous charge, but of a failure to give an instruction which the defendant had the right to demand. If the defendant had asked a disjunctive charge, it would doubtless have been given. Not having made the request, it cannot complain of a charge which is correct, but merely defective. It is true the charge suggests an implication that, unless they found that there was care on the part of the defendant and negligence on the part of the plaintiff, the latter should have a verdict. But we think, in view of the case made by the plaintiff, the jury were not in fact misled."

In Railway v. Hill, supra, it was held, Mr. Justice Brown delivering the opinion, as shown by the syllabus, that "a charge requiring a verdict for the defendant, if the evidence establishes certain facts, is not affirmative error as to him, though it groups conjunctively facts establishing distinct defenses, and requires a finding in his favor only on the establishment of all of such facts; the defect is one of omission, which should be corrected by a request for instructions submitting the defenses disjunctively where nothing appears to indicate that the jury were misled by it."

In view of these holdings, we are of the opinion that the respective charges complained of were not erroneous; and, in view of the entire charge given, not likely to have misled the jury to the prejudice of appellants, for which reason we overrule the assignments assailing them.

[2] In this connection, we might say that it appears by the weight of authority that a party who has placed a deed as an escrow in the hands of a third party for delivery

to a named purchaser upon the happening of a certain contingency does not lose his land if the depositary should wrongfully, without the happening of such contingency, deliver the deed to the grantee, who immediately places the same upon record, and thereafter sells the land to an innocent purchaser for value without notice. Devlin on Deeds, vol. 1, §§ 322, 323; 16 Cyc. subject "Escrow," p. 579, subd. E, and page 581, subd. 3, and authorities there cited; 11 Am. & Eng. Ency. Law, p. 348, subd. D, pp. 349, 350; Houston Land & Trust Co. v. Hubbard, 37 Tex. Civ. App. 546, 85 S. W. 474; Steffian v. Bank, 69 Tex. 518, 6 S. W. 823, and cases there cited; Harkreader v. Clayton, 56 Miss. 383, 31 Am. Rep. 369; Everts v. Agnes, 4 Wis. 356, 65 Am. Dec. 314; Id., 6 Wis. 457; Berry v. Anderson, 22 Ind. 36; Smith v. South Royalton Bank, 32 Vt. 341, 76 Am. Dec. 179; Dixon v. Bristol Savings Bank, 102 Ga. 461, 31 S. E. 96, 66 Am. St. Rep. 193; 8 Amer. Dig. (Dec. Ed.) subject "Escrows," § 14; 19 Cent. Dig. subject "Escrows," §§ 17-20; Anderson v. Goodwin, 125 Ga. 663, 54 S. E. 679; Matteson v. Smith, 61 Neb. 761, 86 N. W. 472; Powers v. Rude, 14 Okl. 381, 79 Pac. 89; Schmidt v. Musson, 20 S. D. 389, 107 N. W. 367; Franklin v. Killilea, 126 Wis. 88, 104 N. W. 993.

In Devlin on Deeds, § 322, treating of this subject, it is said: "Until the condition has been performed and the deed delivered over, the title does not pass, but remains in the grantor. If the condition is not performed, the grantee, as we have seen, is not entitled to the deed. If the depositary deliver the deed without authority to do so from the grantor, or if the grantee obtain possession of it fraudulently without performing the condition, the deed is void. The deed thus obtained conveys no title either to the grantee or purchasers under him. Although, as was previously shown, the possession of a deed by the grantee is prima facie evidence of its delivery, yet, where it appears that the final transfer was dependent upon the the compliance with certain terms and conditions, the party who claims under the deed must prove such compliance. His right to the deed and to the property conveyed is subject to the performance of a condition precedent, and this performance it is necessary to prove. That the condition upon which he was to receive the deed has been performed cannot be inferred from the fact that the grantee has the unexplained possession of the deed. 'If the party to be bound suffer the paper to go into the hands of a third person, with authority to deliver it in case certain conditions are complied with, a transfer of the paper without compliance with the conditions is no delivery for want of authority in the agent to do the act. It is the duty of the party thus accepting a tradition of the instrument to see to it that the agent in the act of transfer is authorized to do it, unless he be the party's general agent.' The owner of a tract of land having subscribed for stock in a railroad company, signed and acknowledged the deed for the land, which, it was agreed, the company should take in payment for the stock subscribed. The deed was placed in the hands of a third person, the grantor telling him that an agent would call in a short time and deliver a certificate for the stock subscribed, and the depositary was instructed, upon the receipt of the certificate, to deliver the deed to the company's agent. The agent called, but did not have any certificate of stock; he, however, requested the depositary to place the deed in his hands, so that he might give it to the attorney of the company for examination. This was done, and the company sold the land. But it was held that the delivery by the depositary before the performance of the condition did not convey the title, and that the owner was entitled to have his deed and the deed made by the railroad company to its grantee set aside as void."

In section 323, same volume, it is said: "The legal title, where possession of an escrow is obtained without performance of the condition upon which a delivery to the grantee was to be made, remains in the grantor, or, if he is dead, in his heirs. To maintain the plea of innocent purchaser, a person must have acquired the legal title which he seeks to protect against some latent equity or charge on the land. Hence this plea cannot avail a person who has bought on the faith of the possession of the escrow by the person named therein, where such possession has been obtained wrongfully. The conveyance made by the grantee in the escrow cannot affect the legal title; for that remains in the grantor or his heirs."

In Houston Land & Trust Co. v. Hubbard, supra, it is said: "A deed delivered without the consent of the grantor has no more effect to pass title than if it were a forgery, or had been stolen. Those claiming as innocent purchasers under such an instrument can hold only by estoppel, based upon a showing that the grantor was guilty of negligence which brought about the unauthorized delivery." In this latter case, deeds were left in the hands of an agent in escrow, to be delivered upon plaintiff's being satisfied with the title, and the same were delivered by the depositary to the grantee without compliance with the terms of the escrow; and the grantee thereafter borrowed money, giving a deed of trust on the property, and it was held that the title still remained in the plaintiff, and he could enjoin the sale under the deed of trust.

In the case of Everts v. Agnes, supra, a deed was left with Zetler as an escrow, with instructions not to be delivered until certain securities should be given by Agnes. Agnes fraudulently got possession of the deed by inducing Zetler to deliver it without executing the securities, and had it recorded, and

sold the land to Swift for a valuable consideration, who was ignorant of the fraud. The court held that Agnes obtained no title, and that he could convey none by any deed he might make to another. In commenting on this case, Mr. Justice Simrall, in Harkreader v. Clayton, supra, said: "The sum of the reasoning is that obtaining the deed by fraud, larceny, or any means short of the performance of the condition is against the assent of the grantor, and, as assent is necessary to a delivery, and a delivery to the validity of the deed, the grantee got no title and could not transmit any. If Swift purchased on the faith of the record, the answer was the registration of an escrow did not give it validity as a deed. That case was afterwards reconsidered, and its doctrine reaffirmed. See 6 Wis. 457."

In Berry v. Anderson, supra, it is said in the syllabus: "Where a deed is delivered to a third person to hold for the parties until the happening of a given event, it is called an escrow, and a delivery by such person to the grantee named in the deed before the happening of the event vests no title in him, and he can convey none."

All of these cases seem to proceed upon the doctrine that an escrow is not a deed, but merely a scroll, possessing no force or vitality, unless it is delivered in accordance with the conditions named in the escrow; that the depositary is without power, by wrongfully delivering the deed to the grantee named therein, to confer upon him any right whatsoever; that, until the deed is in fact delivered in accordance with the terms of the escrow, no title whatever passes to the grantee, and he can convey none. In 11 Am. & Eng. Ency. Law, p. 350, it is said: "It seems to be the prevailing rule that upon a delivery, without the preformance of the conditions or the happening of the contingency stipulated in the escrow, even a subsequent purchaser without notice, and for a valuable consideration, acquires no title and will not be protected." It is not necessary to hold, nor do we hold, that this doctrine should apply and control here, for the reason that the court tried the case entirely upon the theory that the defendant Barrow either did or did not have actual notice, at the time he purchased, of the alleged fraud perpetrated by Boswell, Shofner, and Boatwright upon him, or had notice of such facts as would put him upon inquiry, which, if prosecuted, would have revealed the true facts, and the verdict was in response to this issue.

[3] The court, in the twelfth paragraph of its charge, in effect told the jury that, if the plaintiff, pending the consummation of the agreement for the exchange of lands, voluntarily placed the deed from Boatwright to himself on record in the counties where the land was situated, then he would be estopped from recovering against either of the defendants; but likewise told them that, if they found from a preponderance of the evidence that plaintiff did not so voluntarily place the same upon record, but was induced to do so by reliance upon fraudulent representations made to him by defendant Shofner, then he would not be estopped from recovering herein, if he was otherwise entitled to recover. This section of the charge is complained of by both appellants Barrow and Boswell, on the ground that it required them to show by preponderance of the evidence, that plaintiff voluntarily placed his deed on record before they could find for them, or either of them; whereas, the law required plaintiff to affirmatively establish, by a preponderance of the evidence, that he did not voluntarily, and of his own volition, place the same of record. We do not agree with appellants in this contention, for the reason that the charge is not open to this construction, as well as for the reasons heretofore assigned in discussing previous assignments. Besides, we do not believe that appellee was estopped from recovery by merely voluntarily placing the deed of record. The doing so was only a circumstance which might or might not have this tendency. The charge was, in our judgment, too restrictive, and placed an improper limitation upon plaintiff's right to recover, and should not have been given; but of this appellants would have no right to complain. This view makes it unnecessary to discuss appellant Boswell's special charges Nos. 1 and 2, on the subject complained of under his fourth and fifth assignments respectively.

[4] Appellant Barrow, by his third assignment, insists that the court erred in charging the jury on the subject of constructive notice, on the ground that the proof showed that the defendant either had no notice of the alleged fraud charged in plaintiff's petition, or that he had actual notice of such facts or some of them; and therefore the charge on constructive notice was unnecessary, erroneous, misleading, and prejudicial, in that it injected into the case an element that was contrary to and not supported by the evidence. If it be admitted that the evidence failed to show that appellant Barrow had constructive notice of the alleged agreement between plaintiff and his codefendant, relative to the deeds being held in escrow, still we do not believe that he was prejudiced by reason of such instruction. The jury were not likely to be influenced thereby, and must, we think, have based their verdict upon their belief that the defendant had in fact actual notice of such agreement, or else of such facts as would put him upon inquiry; and therefore said charge on the subject of constructive notice, if error at all, was harmless. See Lewis v. Vaughan, 144 S. W. 1186, recently decided by this court. Also, Shumard v. Johnson, 66 Tex. 70, 17 S. W. 398.

[5] There was evidence going to show that Barrow was to give Boatwright, in exchange for the Milam county land, a tract of land in Webb county which he purchased and

caused to be conveyed directly to Boatwright before the trade between himself and Boatwright was in fact consummated, and he requested, and the court refused, a charge to the effect that, unless the jury should believe from the evidence that the plaintiff notified Barrow of the alleged agreement between plaintiff and Boatwright, relative to holding the deeds in escrow for 90 days, and that the same were not to be delivered to the respective parties until an abstract had been furnished and passed on favorably by a reputable attorney, or notify him of facts which would put him upon inquiry which would lead to a knowledge of the terms of said agreement, before the defendant Barrow had purchased and paid a consideration for said Webb county land, the jury should find for him. The court, in its seventh paragraph, had, as we think, in effect, properly told the jury that, in the event they should believe that at the time Boatwright purchased the land that he had knowledge of the agreement between plaintiff and defendant, as set out in the main charge, then to find for plaintiff. This charge, we think, was comprehensive enough to cover that phase of the fact presented in the special charge, for which reason, if no other, the same was properly refused. Besides, we believe that, if appellant Barrow had had such notice prior to the consummation of his trade with Boatwright, he was not entitled to recover, notwithstanding the fact that prior to such notice he may have, preparatory to making such trade, caused a conveyance of the Webb county land to Boatwright, because, if he acquired such notice before the consummation of the trade, he was not an innocent purchaser for value, without notice, and before the trade was closed could have protected himself by an action to cancel the deed which he had caused to be made to Boatwright. We therefore think that the special charge was properly refused, and overrule the fourth assignment presenting this question.

[6] The plaintiff's petition directly and affirmatively charged all of the defendants, except Barrow, with entering into a conspiracy to defraud him of his land, setting forth in detail the facts and circumstances by which it was consummated, and concluded by charging that Barrow purchased the land from Boatwright with a knowledge of all such facts and circumstances, whereby he did not and could not become an innocent purchaser for value, without notice. Appellant Barrow excepted to said petition, on the ground that the allegations were insufficient to charge him with notice of any alleged conspiracy, or to put him upon inquiry of any facts which would lead to such knowledge on his part. This exception was overruled, which is assigned as error. We think the petition in this respect was amply

sufficient, and that the court properly overruled the exception.

Believing that the evidence is ample to authorize the verdict, and that the errors assigned will not justify us in a reversal of the judgment, the same is, in all things, affirmed.

Affirmed.

KEY, C. J. While I concur in the result announced in the foregoing opinion, I am not willing, without further investigation, to sanction the proposition that, as against an innocent purchaser from a grantee having possession of the deed, the grantor therein will not be estopped in a court of equity from denying the validity of the delivery of the deed, when it is shown that he placed it in the hands of a third person to be delivered to the grantee upon the happening of a certain event, although such event may not have happened. The judgment in this case can be affirmed without deciding that question.